IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
Northern Division

| | | |
|---|---|---|
| **Donald M. Dziwulski** | * | |
|    3013 Mary Avenue | * | |
|    Baltimore, MD 21214 | * | |
|    Baltimore City | * | |
|    **Plaintiff** | * | |
| | * | |
| v. | * | **Civil Action Number:** _____ |
| | * | |
| **Baltimore City Fire Department** | * | |
|    401 East Fayette Street | * | |
|    Baltimore, MD 21202 | * | |
|    Baltimore City | * | |
|    **Defendant** | * | |
|     *Serve on:* | * | |
|     *Chief Niles R. Ford* | * | |
| | * | |
| & | * | **Jury Trial Requested** |
| | * | |
| **Mayor & City Council of Baltimore** | * | |
|    100 Holiday Street | * | |
|    Baltimore, MD 21202 | * | |
|    Baltimore City | * | |
|    **Defendant** | * | |
|     *Serve on:* | * | |
|     *Andre M. Davis* City Solicitor | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## COMPLAINT

Plaintiff Donald M. Dziwulski files this Complaint because the Defendants discriminated against him because of his race and then retaliated against him after he objected to the unlawful discrimination, all in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq.*, including the Civil Rights Act of 1991, 42 U.S.C. §1981 *et seq.* (collectively referred to herein as "Title VII"). The U.S. Equal Employment Opportunity Commission ("EEOC"), in writing, has made formal written determinations that Defendants unlawfully

discriminated and retaliated against Plaintiff in violation of Title VII. *See* EEOC determinations attached hereto as <u>Exhibit 1</u>.

### Statement Of Facts

1. Plaintiff commenced his employment with Defendants in May 1998.

2. Plaintiff is a fully licensed and certified Emergency Medical Technician-Paramedic.

3. Plaintiff has received several commendations as a result of his actions in emergency situations.

4. Plaintiff has never been disciplined during his nearly 20 years of employment with Defendants.

5. Until only very recently and as part of the unlawful retaliation and discrimination, Plaintiff has never been disciplined by Defendants.

6. The Defendant Mayor & City Council of Baltimore ("Defendant Baltimore City") has established and implemented written rules governing the terms and condition of its employees, including for promotions.

7. Some of the governing written rules are set forth in a document that Defendant Baltimore City refers to as its Administrative Manual. Hereinafter, the rules set forth in the Administrative Manual which are applicable to this case are referred to as "Written Rule(s) Administrative Manual".

8. The Defendant Baltimore City Fire Department ("BCFD) also has entered into written contracts with a Union, of which Plaintiff was a member at all times relevant to this lawsuit.

9. The written contract which was applicable to the claims asserted in the case is hereinafter referred to as "the Contract".

10. The Contract provided agreed-upon written rules that the Defendants must follow in promoting Defendant BCFD employees, including not deviating from the policy of selection of the first candidate on a promotion list, through all grades up to and including Battalion Chief.

11. Further, under the Contract, promotion lists ran for two years from the posted date.

12. Defendant BCFD, by a written "Bulletin" dated February 19, 2013, announced that it was seeking qualified applicants for the position of Battalion Chief – EMS EMT-P position, hereinafter referred to as "Battalion Chief".

13. The Bulletin stated the closing date for qualified applicants to apply was "03/08/13 11:59 PM"

14. The Bulletin stated that the "Written Multiple Components Test" was set for Saturday, April 27, 2013.

15. The Bulletin stated that the "Oral with Report Writing Component" was scheduled for "the week of April 29, 2013".

16. The examination was competitive and ranked by score.

17. Plaintiff was a qualified applicant, qualified for the examination and sat for the oral and written components of the examination.

18. About two weeks earlier, on May 1, 2013, Defendant Baltimore City's Chief of Classifications, in writing, submitted to the City's Board of Estimates a request to approve the creation of two Battalion Chief positions.

19. This request is attached hereto as Exhibit 2.

20. The Board of Estimates for the Defendant Baltimore City convened on May 8, 2013.

21. The Board of Estimates for the Defendant Baltimore City did not approve the request for the creation of two Battalion Chief position on May 8, 2013.

22. By a written Bulletin dated May 13, 2013, the Defendant BCFD released the results of the promotional examination, referred to as the promotion list.

23. This Bulletin is attached hereto as Exhibit 3, which listed the top three ranked employees on the promotion list.

24. All three of the top three ranked persons on the promotion list were Caucasian. Of the three top-ranked persons, two were male and one was female.

25. By letter dated May 13, 2013, Defendant Baltimore City informed Plaintiff of his score and ranking on the examination. This letter is attached as Exhibit 4.

26. Plaintiff received the highest score and was ranked as #1 on the "Certification of Eligible (Promotion Ranked)".

27. The promotion list was only released after the prior list had expired on May 12, 2013, the previous day.

28. On May 15, 2013, the Board of Estimates for the Defendant Baltimore City approved the request to create two Battalion Chief positions.

29. The approval of the Board of Estimates is attached hereto as Exhibit 5.

30. Written Rule 101-1 of the Administrative Manual states that an agency of the City cannot act upon a personnel request to the Board of Estimates "until the approved copy is received back from the Office of the Comptroller's Office".

31. Despite being the highest ranked on the then current promotion list, Plaintiff was not promoted into either of the Battalion Chief positions.

32. Instead of following its established written rules, Defendants selected two persons, both African-Americans, for the Battalion Chief positions.

33. Neither of the selected persons were on the then current promotion list.

34. Further, the selected persons were from the prior promotion list that expired on May 12, 2013.

35. Neither of the selected persons even sat for the examination for the current promotional list.

36. One was on vacation, allegedly, voluntarily.

37. One was allegedly in the hospital.

4

38. Plaintiff was not chosen for advancement to the Battalion Chief position because of his race.

39. After he was not selected as a Battalion Chief, Plaintiff was provided with emails that the two persons whom were promoted from the expired list directed to Defendant BCFD management and Defendant City Council members and representatives, the Mayor's staff, and the Vulcan Blazers an advocacy group for African American fire fighters, headquartered in Baltimore, Maryland.

40. Both persons made appeals based on race for their selection, even though both acknowledged that they were not on the current promotion list.

41. Both persons had not even taken the examination for the current promotion list.

42. The emails referenced in the immediately preceding paragraph are attached hereto as <u>Exhibit 6</u>.

43. On or about May 26, 2013, Plaintiff filed a grievance with his Union concerning Defendants' failure to comply with the Written Rules and Contract with respect to not promoting him.

44. The Union chose not to arbitrate Plaintiff's grievance.

45. Thereafter, Plaintiff, via email, requested to meet with Chief of the Defendant BCFD, James S. Clack, who had an "open-door" policy.

46. Plaintiff informed Chief Clack that Plaintiff wanted to have "the same equal employment opportunity afforded to other members of the Department have requested, sometimes demanded, and received a meeting with you".

47. Chief Clack had met alone with minority members of the Defendant BCFD to discuss personnel matters.

48. On June 25, 2013, via email, the Chief refused the meeting and "cc'd" a lawyer for the Defendants.

49. On June 26, 2013, at the request of the Defendant BCFD, the Defendant Baltimore City, through its Board of Estimates, approved another Battalion Chief EMS-EMT-P position by "reclassifying". This was the third Battalion Chief EMS-EMT-P position requested and approved since the then current promotional list became effective on May 13, 2013.

50. The Defendants "reclassified' the position of Deputy Chief that was occupied by Lloyd Carter (African American) to a Battalion Chief EMS-EMT-P position.

51. On or about July 3, 2013, Acting Chief of Defendant BCFD Jeffrey Segal (African American) selected and approved of the "voluntary demotion" of the then Deputy Chief Lloyd Carter (African American) for the Battalion Chief EMS-EMT-P position.

52. Plaintiff was not even allowed to apply for this position, because the position was created by "reclassification".

53. Plaintiff was not selected for this third Battalion Chief EMS-EMT-P position because of his race and in retaliation for him objecting to the race discrimination.

54. On November 8, 2013, at a meeting held at the Defendants' Labor Commissioner's Office, Plaintiff reported that he had been discriminated against due to his race when he was not selected for promotion to the Battalion Chief EMS-EMT-P position from the current promotional eligibility list. The Defendants' lawyer was present in the meeting as well as the Chief of the BCFD.

55. Pursuant to a superior's directive, Plaintiff on November 11, 2013, Plaintiff was assigned as "acting" in the Battalion Chief EMS-EMT-P position for which Lloyd Carter had been selected.

56. Plaintiff was told that he would receive Battalion Chief pay during the period when he was "acting" as Battalion Chief.

57. Lloyd Carter was on vacation and then terminal leave vacation during the time, when, on paper, her held the Battalion Chief EMS-EMT-P position.

58. Mr. Carter's leave ended on January 1, 2014, when he retired.

59. Plaintiff continued to "act" in the Battalion Chief EMS-EMT-P position.

60. Plaintiff, pursuant to Defendants' Written Rules and the Contract, was next in-line for Battalion Chief EMS-EMT-P position that had been assigned to Mr. Carter.

61. Defendants failed to inform Plaintiff that he was to be selected for the Battalion Chief EMS-EMT-P position for which he had been working as in "acting" capacity for months.

62. On January 13, 2014, Plaintiff, by email to the Defendants' EEO Officer reported the unlawful race discrimination. A copy of this email is attached hereto as Exhibit 7.

63. Plaintiff reported that he had been discriminated against because of his race.

64. Plaintiff also expressly stated that he was concerned about retaliation being directed against him.

65. The Defendants' EEO Office promptly informed the Defendant BCFD command structure and the Defendant Baltimore City leaders and representatives, without first informing Plaintiff.

66. Plaintiff had asked for "confidentiality" when he filed his EEO complaint.

67. Defendants' EEO officer never responded to Plaintiff as to the results, if any, of its investigation, if any.

68. Plaintiff learned that Defendants intended to eliminate the Battalion Chief EMS-EMT-P position, without explanation, and in which he had been working in "acting" capacity.

69. Plaintiff was next "in-line" for the Battalion Chief EMS-EMT-P position.

70. On January 23, 2014, Plaintiff filed a charge of discrimination and retaliation with the U.S. Equal Employment Opportunity Commission. This EEOC Charge is attached hetero as Exhibit 8.

71. In part, the EEOC Charge states:

> I have been denied a promotion into the position of Battalion Chief EMS-EMT-P despite having the highest score and being ranked number one on the promotional list.

> ... Additionally, a new Battalion Chief EMS-EMT-P position was created as a voluntary demotion for another African-American employee. ... I complained about the discriminatory acts against me ...

72. On February 12, 2014, when Plaintiff was still "acting" as the Battalion Chief EMS-EMT-P position, was told by a Deputy Chief that he had been order to stop Plaintiff's "acting" pay.

73. No explanation was provided to Plaintiff by the Deputy Chief.

74. Defendant stopped the "acting" pay in retaliation for Plaintiff objecting to and reporting the unlawful race discrimination.

75. On March 6, 2014, Plaintiff filed a second Charge with the EEOC, alleging retaliation. This EEOC charge is attached as Exhibit 9.

76. In part, the EEOC charge states that: "I have been retaliated against for engaging in protected activity with respect to wages in violation of Title VII".

77. Defendants eliminated the Battalion Chief EMS-EMT-P position, in April 2014. They did not select Plaintiff for it because of Plaintiff's race and in retaliation for Plaintiff objecting to the discrimination.

78. At the same time, Defendants eliminated the Battalion Chief EMS-EMT-P position that was given "on-paper" to Mr. Carter, they also created a totally new Battalion Chief position for "Special Operations".

79. The Battalion Chief for Special Operations was vacant for more than six months and there was no announcement for the created, but vacant position.

80. Defendants have taken adverse employment actions against Plaintiff on account of his race and in retaliation for him objecting to and reporting the race discrimination.

81. Defendants have not ceased the "acting pay" of African-Americans as it did against Plaintiff.

82. Defendants, within the BCFD, have engaged in machinations and not followed and/or contorted the Written Rules to advance the careers of persons based on race and not based on qualifications.

83. Plaintiff has been greatly damaged on account of the unlawful discrimination and retaliation.

84. Plaintiff has suffered financial loss and has been subjected to emotional distress and anguish.

85. Plaintiff watched others advance in careers when not they were not selected based on qualification and/or governing Rules.

86. Had Plaintiff not been discriminated against in non-selection for a Battalion Chief position, he would have been eligible for further advancement within the Defendant BCFD.

87. The discriminatory practices and retaliation resulted in Plaintiff to-date not being eligible to be promoted to a deputy chief position.

88. On March 30, 2015, the EEOC issued a written Determination with respect to Plaintiff's first EEOC charge. *See* Exhibit 1.

89. In part, the EEOC written Determination stated:

> Charging Party [the Plaintiff] ranked number one on the applicable [promotion] list; however, Respondent [the Defendants] utilized an expired list to promote Captains Claggett and Stokes to the positions of Battalion Chief. Evidence shows the two highest-ranked and eligible individuals for promotion from the active list were both Caucasians. Despite the applicable listing and eligible individuals, Respondent failed to promote these individuals. Rather, Respondent promoted two African-American employees from a list which had expired …

90. On March 31, 2015, the EEOC issued a written Determination with respect to Plaintiff's second EEOC charge. *See* Exhibit 1.

91. In part, the EEOC written Determination stated:

> On January 23, 2014, Charging Party filed a Charge of Discrimination alleging denial promotion based on race and retaliation. The evidence shows, effective February 13, 2014, Respondent ceased paying Charging Party acting-out-of-title pay for the performance of MDO duties. Despite Respondent's articulated reason for stopping acting-out-of-title pay

to Charging Party, the evidence shows that Respondent's decision occurred within approximately three (3) weeks after Charging Party's filing of his initial Charge of Discrimination. Based on the timing events, the Commission concludes Respondent's articulated nondiscriminatory reason for stopping payment of acting-out-of-title pay was retaliatory or pretext to hide discrimination based on engagement in a protected activity.

92. After the EEOC issued its written Determinations and Defendants failed to settle, pursuant to federal law and regulations, the U.S. Department of Justice investigated Plaintiff's claims of discrimination and retaliation.

93. The U.S. Department of Justice did not conclude its investigation and decided not to sue on Plaintiff's behalf until November 30, 2017, when it issued Plaintiff his notice that he could himself sue the Defendants directly. *See* Exhibit 1.

94. The retaliation against Plaintiff is continuing and ongoing.

95. For example, in January 2018, Plaintiff was subject to discipline for the first time ever during his decades of employment with the Defendants.

96. The claimed offense occurred months earlier in August 2017.

97. The stated reason for the discipline was pretextual.

98. The "investigation" into the claimed offense was retaliatory in its conduct and process.

99. Defendants have delayed in honoring a transfer request by Plaintiff as form of intimidation and worry.

100. Other transfer requests by others are timely processed and approved.

101. Further, knowing that Plaintiff was not on a Battalion Chief promotion list (although he should have been), Defendants created "floating" Battalion Chief positions, when there was no operational need for such.

102. Defendants acted to promote non-Caucasians to Battalion Chief positions based on racial considerations, by ignoring Written Rules and the Contract, by trying to create documents-after-the-fact to attempt to cover-up their discriminatory actions, and lying to Plaintiff.

## Jurisdiction & Venue

103. This case presents a federal question under federal civil rights law – Title VII.

104. Plaintiff has complied with all prerequisites for the filing of this lawsuit.

105. Venue is proper in this Court because the unlawful actions occurred in this District.

## VIOLATIONS OF LAW

### Count I – Violation of Title VII – Unlawful Race Discrimination

106. All allegations of this Complaint are expressly included in this Count I.

107. Defendants discriminated against Plaintiff in the terms and conditions based on his race.

108. Defendants subjected Plaintiff to disparate treatment because of his race.

109. Plaintiff was not promoted to positions for which he was eligible and should have been promoted to because of his race.

110. Defendant stopped Plaintiff's "acting pay" due to unlawful race-based considerations.

111. Similarly situated employees of a different race have been allowed "acting pay" to continue throughout the period in which the employees were serving in "acting capacity".

112. Defendants' unlawful conduct has caused Plaintiff financial and employee benefit loss, great damage to his career and reputation, and emotional pain and anguish.

113. Defendants only took the action they did against Plaintiff because of Plaintiff's race.

114. Relief requested – Plaintiff requests that he be made whole for the damage caused to him from Defendants' unlawful discrimination. Plaintiff asks respectfully that he be awarded: (a) lost wages and benefits; (b) compensatory damages; and (c) attorney fees and costs. In addition,

Plaintiff asks the Court to Order that Defendants assign Plaintiff to Battalion Chief position at the highest possible salary rate and to appoint an independent monitor to ensure that Plaintiff is not further discriminated or retaliated against.

## Count II – Violation of Title VII – Unlawful Retaliation

115. All allegations of this Complaint are expressly included in this Count II.

116. Plaintiff engaged in protected activity, conduct and opposition under Title VII.

117. Defendants retaliated against Plaintiff for his protected activity, conduct and opposition under Title VII.

118. Plaintiff was not promoted and had his "acting pay" cut-off as part of Defendants' campaign of retaliation against him.

119. Defendants' unlawful conduct has caused Plaintiff financial and employee benefit loss, great damage to his career and reputation, and emotional pain and anguish.

120. Defendants only took the action they did against Plaintiff because of Plaintiff's race and protected activity, conduct and opposition.

121. Defendants' unlawful retaliation against Plaintiff continues to date.

122. Relief requested – Plaintiff requests that he be made whole for the damage caused to him from Defendants' unlawful retaliation. Plaintiff asks respectfully that he be awarded: (a) lost wages and benefits; (b) compensatory damages; and (c) attorney fees and costs. In addition, Plaintiff asks the Court to Order that Defendants assign Plaintiff to Battalion Chief position at the highest possible salary rate and to appoint an independent monitor to ensure that Plaintiff is not further discriminated or retaliated against.

Respectfully submitted,

_____
Stephen B. Lebau (Bar # 07258)
LEBAU & NEUWORTH, LLC
606 Baltimore Avenue – Suite 201
Towson, Maryland 21204
tel. 443.273.1203
fax. 410.296.8660
*Attorneys for Plaintiff*

## REQUEST FOR JURY TRIAL

Plaintiff requests that a jury of his peers hear and decide this case.

Respectfully submitted,

_____
Stephen B. Lebau (Bar # 07258)